**United States District Court for the Southern District of Ohio**
**Eastern Division**

FILED
RICHARD W. NAGEL
CLERK OF COURT
SEP - 8 2026 4:01 P
U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-COLUMBUS

**Patrick-Joseph Groulx**

Plaintiff,

Case Number: 2:26-cv-00847

District Judge: James L. Graham

District Magistrate: S Courter Shimeall

JURY TRIAL DEMANDED PURSUANT TO THE SEVENTH AMENDMENT

v.

**The Huntington National Bank**

Defendant.

---

Patrick-Joseph: Groulx (P00000)
In Propria Persona
2070 Houlihan Road
Saginaw Michigan 48601
989 860-2550
mr.288074@yahoo.com

---

**Plaintiff's CORRECTED FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF (JURY DEMAND ENDORSED HEREIN)**

## A. INTRODUCTION / NATURE OF THE ACTION

This is an action by Plaintiff Patrick-Joseph Groulx, proceeding pro se, against Defendant The Huntington National Bank for silent fraud by omission (fraudulent concealment), malicious intent, gross negligence, breach of fiduciary duty, breach of contract, and resulting personal injury. Plaintiff seeks compensatory damages of $800,000.00 (including doubled fraud damages as detailed herein), exemplary/punitive damages of $250,000.00, statutory and UCC enhancements totaling $600,000.00, broad injunctive relief, and other relief as set forth below. The amount in controversy greatly exceeds $75,000 exclusive of interest and costs.

## B. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of the State of Michigan and Defendant is a citizen of the State of Ohio, and the amount in controversy exceeds $75,000 exclusive of interest and costs.
2. This Court has supplemental jurisdiction over all state-law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the claims within the Court's original jurisdiction.
3. Venue is proper in the Southern District of Ohio, Eastern Division, under 28 U.S.C. § 1391(b)(1) and (2). Defendant resides in this District (its principal place

of business and headquarters are located in Columbus, Ohio). Defendant is subject to personal jurisdiction here, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including the maintenance and security of Defendant's online banking systems, corporate decisions regarding information security investments and breach response, and the systemic failures that permitted the unauthorized access described herein.

## C. PARTIES

4. Plaintiff Patrick-Joseph Groulx is an individual and citizen of the State of Michigan residing at 2070 Houlihan Road, Saginaw, Michigan 48601. He maintains online banking and other accounts with Defendant and has been a customer of Defendant for multiple years.
5. Defendant The Huntington National Bank is a national banking association chartered under the laws of the United States with its principal place of business and headquarters at 5555 Cleveland Avenue, Columbus, Ohio 43231. Defendant maintains branches in Michigan (including Saginaw) and provides online banking services to customers nationwide, including Plaintiff. Defendant is a citizen of the State of Ohio for diversity purposes. Defendant CEO, Stephen D. Steinour takes filings on behalf of defendant at 4272 Olmsted Rd, New Albany, OH 43054

## D. GENERAL ALLEGATIONS / STATEMENT OF FACTS

6. Plaintiff realleges and incorporates by reference the facts set forth in his Notice of Demand for Monetary Relief, Resolution of Security Breach, and Intent to File Federal Lawsuit dated April 16, 2026 (served on Defendant via Priority Mail with tracking), as if fully set forth herein.
7. On or about April 8, 2026, at approximately 10:45 a.m., unauthorized foreign actors—whom Plaintiff has reason to believe and therefore alleges were associated with or operating from Israel—directly accessed Plaintiff's Huntington online banking credentials, Social Security number (SSN XXX-XX-1049), username, password, full account number, Huntington short nickname, the physical address and phone number of Plaintiff's local Huntington branch in Saginaw, Michigan, Defendant's web address, and a Huntington email account. This constituted a complete compromise of Defendant's systems and Plaintiff's most sensitive personal identifying and financial information.
8. On April 9, 2026, Plaintiff personally appeared at the Huntington Bank branch on State Street in Saginaw, Michigan, and presented documentary and direct evidence of this unauthorized access and the connection to actors operating from Israel to banker Steve Ahler. Mr. Ahler became visibly frustrated and agitated when shown the evidence.

9. This was not an isolated event. In 2025, the same or related actors used Plaintiff's name, SSN, and date of birth (May 20, 1977) to open unauthorized accounts at GO2 Bank in Ohio and Coinbase in California. This established a clear, ongoing, and escalating pattern of identity theft and account compromise of which Defendant was or should have been aware.

10. Despite the clear compromise of Plaintiff's username, password, and SSN—information that provides near-total access to Plaintiff's financial life and identity—Defendant has never notified Plaintiff of this specific breach, the scope of the infiltration, the involvement of foreign actors, or any remedial steps taken or offered.

11. Defendant, a national bank with approximately $34 billion in market value and $285 billion in assets, owed Plaintiff a duty of care, fiduciary-like obligation, and contractual duty to safeguard his nonpublic personal information (including his SSN and online banking credentials) from unauthorized access by third parties or foreign actors. This duty arises from the Gramm-Leach-Bliley Act, OCC Interagency Guidelines, Defendant's own privacy policy and online banking agreement (a binding contract), industry standards, and the special relationship between a bank and its customer regarding sensitive financial and identifying information.

12. Defendant represented and contracted that it would maintain reasonable and appropriate technical, administrative, and physical safeguards, keep pace with evolving cyber threats (including sophisticated nation-state actor attacks and AI-driven intrusions), and promptly notify affected customers of any breach posing a risk of identity theft or financial harm.

13. Defendant possessed superior knowledge of its own system vulnerabilities, prior incidents, the capabilities of foreign threat actors (including those allegedly leveraging advanced technologies such as the Google Willow quantum chip to enable AI bots or "AI viruses" for credential harvesting and system infiltration), and the catastrophic consequences to customers if such information were compromised. This created an affirmative duty to disclose the breach to Plaintiff immediately upon discovery.

14. Defendant failed to implement and maintain adequate, up-to-date safeguards against known and emerging threats despite having the financial resources to invest $10 million or more in advanced anti-AI bot programs, quantum-resistant authentication, enhanced monitoring, and zero-trust architectures without material impact on its operations or valuation.

15. As a direct, proximate, and foreseeable result of Defendant's failures, Plaintiff has suffered concrete, actual, and ongoing personal injury, including but not limited to: (a) the completed "theft" and ongoing possession by hostile foreign actors of his SSN, username, password, full account number, and related PII — an actionable invasion of privacy and theft of identity attributes; (b) severe emotional distress, anxiety, hypervigilance, sleep disturbance, and mental anguish from the knowledge that hostile foreign actors now hold the keys to his financial identity and are positioned to steal his wealth; (c) concrete and imminent risk of further identity theft, account takeover, credit fraud, and financial devastation, forcing Plaintiff to expend time, resources, and emotional energy on protective measures; (d) loss of the security and privacy he reasonably expected in his banking relationship; (e) exacerbation of pre-existing permanent medical conditions caused by the additional stress; and (f) loss of faith in the banking system and the ability to conduct secure online banking.

16. Defendant's conduct constitutes silent fraud by omission, malicious intent, gross negligence, breach of fiduciary duty, and breach of contract, as more fully set forth in Count I below.

17. As further proof of the unauthorized access on or about April 8, 2026 at approximately 10:45 a.m., Plaintiff attaches hereto as **Exhibits 1 through 5** Google Trends data showing sharp spikes in search interest originating from Israel for Plaintiff's personal identifiers on or around the exact date and time of the breach. These spikes are not coincidental. Exhibit 1 shows a spike for Plaintiff's Huntington account short nickname on April 8, 2026 at 8:32 AM. Exhibit 2 shows spikes for Plaintiff's property address "2070 Houlihan Road Saginaw Michigan 48601" on April 8, 2026. Exhibit 3 shows a spike for Plaintiff's Huntington account number on April 5-6, 2026. Exhibit 4 shows a spike for Plaintiff's date of birth "XX/XX/1977" on April 8, 2026. Exhibit 5 shows a spike for Plaintiff's Social Security number "XXX-XX-1049" on April 7, 2026. These data points constitute powerful circumstantial evidence that the access was carried out by actors operating from Israel who had obtained and were using Plaintiff's personal information.

18. Plaintiff does not save usernames or passwords on his computer or any device. The fact that the foreign actors were able to derive and use Plaintiff's credentials, SSN, and other personal information to access his specific Huntington online banking page supports the conclusion that the breach involved sophisticated cyber techniques, including the deployment of hundreds of AI-powered bots by advanced actors, consistent with the capabilities of state-linked cyber units such as Israel's Unit 8200, to hack Defendant's systems and exfiltrate passwords, usernames, Social Security numbers, and personal information.

19. Plaintiff further alleges that these events are part of a broader pattern. In May 2026, Israeli Prime Minister Benjamin Netanyahu stated on CBS News his desire to phase out the financial component of U.S. military aid to Israel and draw it down to zero. Plaintiff has reason to believe that this policy shift is enabled by Israel's advanced cyber capabilities, which have allegedly been used to conduct large-scale data collection and financial extraction operations on a global scale, potentially generating significant revenue through small, distributed transactions (such as a quarter or a dollar per person per week) across many individuals and institutions, theoretically yielding approximately $1 billion per week.

## E. ENTITLEMENT CLAUSE

20. Plaintiff Patrick-Joseph Groulx is entitled to the full scope of relief requested in this Complaint for the following reasons, established through specific facts and the 5W1H framework:

a. **Who** is entitled to relief: Plaintiff Patrick-Joseph Groulx, an individual Michigan resident and longtime customer of Defendant whose Social Security number (SSN XXX-XX-1049), username, password, and full account credentials were accessed and exfiltrated by foreign actors associated with Israel on April 8, 2026, and who personally confronted Defendant's branch staff with evidence of that access on April 9, 2026, only to be met with silence and concealment.

b. **What** Plaintiff is entitled to: The complete relief requested — Eight Hundred Thousand Dollars ($800,000.00) in compensatory damages (including Six Hundred Thousand Dollars in doubled fraud damages), Two Hundred Fifty Thousand Dollars ($250,000.00) in exemplary and punitive damages, Six Hundred Thousand Dollars ($600,000.00) in federal, state, and UCC statutory enhancements, comprehensive injunctive and equitable relief (immediate account safeguards, court-supervised independent audit, and three years of reporting), referral of the foreign-actor compromise to federal law enforcement

authorities for criminal investigation, pre- and post-judgment interest, costs, and any other relief the Court deems just and proper.

c. **Where** Plaintiff is entitled to this relief: In this Honorable Court, the United States District Court for the Southern District of Ohio, Eastern Division, which possesses both subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity) and supplemental jurisdiction under 28 U.S.C. § 1367, and in which venue is proper under 28 U.S.C. § 1391(b) because Defendant maintains its principal place of business and headquarters in Columbus, Ohio, and a substantial part of the events and omissions giving rise to Plaintiff's claims (systemic security failures, policy decisions, and concealment) occurred in connection with Defendant's Ohio-based operations and online banking systems.

d. **When** Plaintiff became and remains entitled to this relief: Plaintiff became entitled on April 8, 2026, the date foreign actors associated with Israel accessed and exfiltrated his most sensitive personal identifying and financial information through Defendant's compromised systems. His entitlement crystallized and became fully actionable no later than April 9, 2026, when he personally presented evidence of the Israel-linked breach to Defendant's Saginaw branch banker Steve Ahler and Defendant knowingly chose to conceal rather than disclose or remediate. Plaintiff's entitlement continues daily because the injury — ongoing possession of his identity attributes by hostile foreign actors and the

resulting severe emotional distress — persists as a direct and proximate result of Defendant's intentional post-breach silence.

e. **Why** Plaintiff is entitled to the full relief: Because Defendant's conduct satisfies every element of silent fraud by omission, malicious intent, gross negligence, breach of fiduciary duty, and breach of contract under Michigan and federal common law, proximately causing Plaintiff profound personal injury (the completed theft and continuing possession of his SSN and banking credentials by foreign actors, severe emotional distress, exacerbation of pre-existing permanent medical conditions, invasion of privacy, and loss of financial security). Defendant's own Privacy Policy at www.huntington.com/Privacy-Security/privacy-policies/privacy-policy promised it would "employ appropriate safeguards to protect Personal Information" and would "endeavor to… notify you… as promptly as possible" if security was compromised — promises Defendant knowingly violated. Defendant's graduated culpability (extreme recklessness in failing to invest in known defensive technologies despite $285 billion in assets, followed by deliberate malice in concealing the breach after direct confrontation on April 9, 2026) places its conduct at the highest level of reprehensibility. The full relief is necessary to compensate Plaintiff for actual, non-speculative harms, to punish Defendant for its aggravated misconduct, to deter Defendant and other financial institutions from

similar future violations of customer trust and their own public representations, and to vindicate the strong public interest in secure banking systems and protection of sensitive personal information from foreign actors.

f. **How** Plaintiff is entitled to the full relief: Through particularized factual allegations that meet the plausibility standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and the particularity requirements of Fed. R. Civ. P. 9(b) for all fraud-based claims. Every element of Count I is supported by specific facts (exact dates of April 8 and April 9, 2026, specific roles of Defendant's personnel including banker Steve Ahler and General Counsel Marcy Hingst, Defendant's own Privacy Policy language, the pattern of 2025 identity theft incidents, the Google Trends spikes in Exhibits 1-5, and the ongoing nature of the injury). Proximate cause is explicitly established between Defendant's knowing omission and concealment and each category of harm. The requested relief is further supported by established precedent for compensatory, exemplary/punitive, and enhanced statutory damages (*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996)), by Defendant's own admissions in its Privacy Policy, and by the need to make Plaintiff whole where money damages alone are insufficient due to the ongoing risk created by compromised credentials.

## F. IMMUNITY DOES NOT EXIST

21. Defendant The Huntington National Bank is **not immune** from this civil action. The following establishes, through specific facts and the 5W1H framework, why no form of immunity shields Defendant from liability or from the full relief requested:

a. **Who** enjoys no immunity: Defendant, The Huntington National Bank, a private national banking association organized under the laws of the United States and headquartered in Columbus, Ohio. Defendant is a for-profit private corporation, not a government agency, not a government official, and not performing any governmental function in its capacity as a bank holding and safeguarding Plaintiff's personal identifying and financial information.

b. **What** immunity does not exist: No sovereign immunity, qualified immunity, official immunity, or any other form of immunity — federal or state — applies to Defendant in this action. Defendant cannot claim immunity from claims of silent fraud by omission, malicious intent, gross negligence, breach of fiduciary duty, breach of contract, or the resulting personal injury arising from its April 8, 2026 unauthorized access by foreign actors and its knowing concealment after the April 9, 2026 branch confrontation.

c. **Where** immunity does not exist: In this Court and in any court of competent jurisdiction. Defendant, as a private national bank doing business across state lines and maintaining branches in Michigan, is fully subject to the jurisdiction of federal and state courts for civil claims arising from its commercial banking activities, data security failures, and contractual obligations. No immunity defense has ever been recognized for private banks in data breach, fraud, negligence, or breach-of-contract cases of this nature.

d. **When** immunity has never existed and does not exist now: Immunity has never applied to private banks such as Defendant in the performance of ordinary banking functions, including the protection of customer data and compliance with their own privacy policies. Defendant enjoyed no immunity on April 8, 2026 (when foreign actors accessed Plaintiff's information through Defendant's systems), on April 9, 2026 (when Defendant was confronted with evidence and chose to conceal the breach), or at any time thereafter. The ongoing concealment and resulting personal injury continue without any immunity protection.

e. **Why** Defendant is not immune: Because Defendant is a purely private actor. Sovereign immunity protects only the federal and state governments and their agencies. Qualified immunity protects only government officials performing discretionary functions. Neither doctrine extends to private corporations such as national banks. Defendant's conduct — failing to employ the "appropriate safeguards" it promised in its own Privacy Policy, allowing unauthorized access by foreign actors, and then intentionally concealing the breach after direct confrontation — constitutes ordinary commercial activity governed by common-law tort, contract, and statutory duties. Private banks are routinely held civilly liable for data breaches, identity theft, fraud, negligence, and breach of contract without any immunity defense. Allowing immunity here would nullify the very protections Congress and state legislatures created through the Gramm-Leach-Bliley Act, data breach notification statutes, and the UCC. Defendant's own contractual and policy representations further estop any claim of immunity.

f. **How** Defendant is not immune: Through well-established legal principles that private corporations performing banking and data-protection functions enjoy no sovereign or qualified immunity. See, e.g., *Richardson v. McKnight*, 521 U.S. 399 (1997) (qualified immunity does not automatically extend to private actors even when performing certain public functions). Defendant's status as a private national bank subjects it fully to civil liability for the harms alleged. Plaintiff's claims are classic common-law and statutory causes of action against a private party. No governmental immunity, official immunity, or contractual immunity defense is available. Defendant is therefore fully exposed to, and must answer for, the full scope of compensatory, punitive, statutory, and injunctive relief requested in this Complaint.

## COUNT I

## SILENT FRAUD BY OMISSION, ACTUAL FRAUD, MALICIOUS INTENT, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND PERSONAL INJURY

22. Plaintiff realleges and incorporates by reference paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23. Pursuant to the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the allegations in this Count state claims to relief that are plausible on their face. The factual matter pleaded, accepted as true, raises Plaintiff's right to relief above the speculative level and permits the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. Plaintiff does not rely on labels, conclusions, or formulaic recitations of the elements of a cause of action. Instead, Plaintiff supplies specific, particularized factual allegations—dates, times, locations, named individuals, direct confrontations, Defendant's own public Privacy Policy language, Google Trends data, a formal written Notice of Inquiry with a 14-day response deadline, and Defendant's complete failure to respond—that render each claim contextually probable and conceivable.

a. Under *Twombly* and *Iqbal*, the Court must accept well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor while disregarding bare legal conclusions. The facts alleged here do more than create a "sheer possibility" of wrongdoing; they allow a reasonable inference of liability because they detail:

1. Defendant's knowledge or reckless disregard of the April 8, 2026 unauthorized access;
2. Defendant's continued silence after being directly confronted on April 9, 2026;
3. Defendant's affirmative representations in its Privacy Policy regarding safeguards and prompt notification;
4. Plaintiff's justifiable reliance on those representations;
5. the concrete personal injury that followed from the completed theft and ongoing possession of Plaintiff's SSN and credentials by the identified actors; and (f) Defendant's further knowing silence after receiving Plaintiff's formal July 22, 2026 Notice of Inquiry that demanded a complete written response within fourteen (14) days. These factual allegations supply the "who, what, when, where, and how" required to cross the line from conceivable to plausible for silent fraud by omission, actual fraud, gross negligence, breach of fiduciary duty, breach of contract, and the resulting

personal injury. The claims are therefore well-pleaded under the governing federal standards.

24. Defendant The Huntington National Bank (through its information security personnel, compliance officers, branch staff including banker Steve Ahler, Legal Department, and General Counsel Marcy Hingst) knowingly and with reckless disregard for Plaintiff's rights committed silent fraud by omission when it suppressed the material fact that, on April 8, 2026, at approximately 10:45 a.m., foreign actors associated with Israel had accessed and exfiltrated Plaintiff's Social Security number (SSN XXX-XX-1049), username, password, full account number, and related credentials through compromise of Defendant's online banking systems.

a. **Who**: Defendant's responsible officers and personnel knew or should have known of the breach via internal access logs, monitoring systems, and the direct confrontation at the Saginaw branch on April 9, 2026.

b. **What**: The precise material omission was Defendant's complete failure to disclose the April 8, 2026 unauthorized access by Israel-linked actors and the resulting compromise of Plaintiff's SSN and banking credentials, in direct violation of its own public Privacy Policy representations. Google Trends data (Exhibits 1-5) showing spikes from Israel for Plaintiff's personal identifiers on or around April 8, 2026, corroborates that the breach was perpetrated by actors operating from Israel using advanced cyber techniques, including AI-powered bots.

c. **When**: The omission began on April 8, 2026 and has continued daily through the present, despite Defendant's actual knowledge confirmed no later than April 9, 2026, and despite Plaintiff's formal written demand for disclosure.

d. **Where**: The omission occurred through Defendant's failure to use its established notification channels (secure online messaging, U.S. mail to 2070 Houlihan Road, Saginaw, Michigan 48601, or telephone to 989-860-2550) and through its continued operation of its online banking platform and Privacy Policy.

e. **How**: By affirmative silence and concealment after being directly confronted with evidence of the Israel-linked breach at the Saginaw branch on April 9, 2026, and by failing to issue any notice, alert, or remediation offer.

f. **Why false and misleading**: Defendant's own Privacy Policy expressly represents that it "employ[s] appropriate safeguards to protect Personal Information" and that it would "endeavor to… notify you… as promptly as possible" if it believed security "may have been compromised." The April 8–9, 2026 events triggered these commitments, yet Defendant remained silent in knowing violation of its policy, the Gramm-Leach-Bliley Act, OCC guidelines, and Michigan and Ohio breach-notification statutes, choosing concealment to avoid admitting systemic vulnerability and incurring remediation costs.

25. On July 21, 2026 (signed and transmitted July 22, 2026), Plaintiff sent Defendant a formal **Notice of Inquiry Regarding Unauthorized Access / Security Breach of Customer Account by Foreign Actors Originating from Israel** (the "Notice of Inquiry"), addressed to The Huntington National Bank, Attn: Legal Department / General Counsel Marcy Hingst, 5555 Cleveland Avenue, Columbus, Ohio 43231, and transmitted by First Class Mail and by email to privacy@huntington.com and idtheft@huntington.com.

a. The Notice of Inquiry:

1. expressly referenced Plaintiff's prior April 16, 2026 Notice of Demand for Monetary Relief, Resolution of Security Breach, and Intent to File Federal Lawsuit;

2. stated that a federal lawsuit had been filed (Defendant not yet served) and that judicial recusals were ongoing;
3. demanded complete, specific, and documented answers to every material question about the breach under the 5W1H framework (Who, What, When, Where, Why, and How);
4. required that all responses be in writing, under the signature of an authorized officer or counsel with personal knowledge or access to the relevant records;
5. set a firm deadline of fourteen (14) days from receipt for a complete substantive response;
6. formally placed Defendant on notice to preserve all evidence, including server logs, access logs, IP address records, authentication records, security alerts, internal investigation files, communications with third parties or government agencies, and any forensic reports relating to Plaintiff's account or the Israeli-origin activity; and
7. expressly stated that failure to respond fully and timely would be treated as evidence of bad faith, concealment, and/or ongoing negligence and would be used in support of an amended complaint, amended exhibit list, and all available claims for relief (including exemplary and punitive damages).

Defendant received the Notice of Inquiry. Fourteen (14) days elapsed. Defendant provided **no response whatsoever**—no written acknowledgment, no partial answers, no claim of inability to respond, and no preservation confirmation. This total non-response after a formal, detailed, time-limited demand constitutes further knowing and intentional concealment of the material facts of the April 8, 2026 breach and is additional direct evidence of Defendant's malicious intent, bad faith, and continuous silent fraud by omission.

26. This silent fraud by omission—beginning with the April 8–9, 2026 events, continuing through the April 16, 2026 demand letter, and continuing still after the July 22, 2026 Notice of Inquiry and the expiration of the 14-day response deadline—is the post-breach unifying and aggravating element of Defendant's single continuous course of wrongful conduct. It was committed with malicious intent and concealed Defendant's pre-breach gross negligence, breach of fiduciary duty, and breach of contract that enabled the Israel-linked access, while directly aggravating Plaintiff's personal injury, as fully chained in paragraph 28 below.

27. Defendant owed Plaintiff multiple overlapping duties arising from the same facts:

a. fiduciary duty (or duty of care and loyalty arising from the relationship of trust and confidence) to protect Plaintiff's most sensitive personal identifying information, including SSN XXX-XX-1049, username, password, and full account credentials, which Plaintiff reposed in Defendant by providing this information for banking services and which Defendant's own Privacy Policy reinforced by promising "appropriate safeguards";

b. a duty of reasonable care to protect the same information from unauthorized access; and

c. contractual duties under the online banking agreement (which incorporates or is supplemented by the Privacy Policy), including express terms to "employ appropriate safeguards to protect Personal Information" and to "endeavor to… notify you… as promptly as possible" if security "may have been compromised," plus the implied covenant of good faith and fair dealing (UCC § 1-304).

28. Defendant breached all of these duties through gross negligence, breach of fiduciary duty, and breach of contract committed with malicious intent and reckless indifference to Plaintiff's rights. These breaches directly and proximately caused Plaintiff's personal injury: the completed theft and ongoing possession/control of his SSN XXX-XX-1049 and credentials by hostile foreign actors associated with Israel (corroborated by Google Trends spikes from Israel in Exhibits 1-5 and the April 9, 2026 branch confrontation), severe emotional distress, anxiety, hypervigilance, sleep disturbance, and mental anguish from the knowledge that those actors now hold the keys to his financial identity, and material exacerbation of his pre-existing permanent disabilities from the 2019 pesticide exposure.

a. **Silent Fraud Elements Explicitly Linked to Each Tort**. Defendant compounded every prior breach (gross negligence, fiduciary duty, and contract) with malicious intent through its silent fraud by omission—the intentional concealment of the April 8, 2026 breach even after being directly confronted with evidence at the Saginaw branch on April 9, 2026, and the further intentional concealment after receiving Plaintiff's formal July 22, 2026 Notice of Inquiry that demanded a complete written response within fourteen (14) days. Defendant's total failure to respond to that Notice of Inquiry is itself a further breach of fiduciary duty (failure to disclose material facts regarding

information entrusted in a relationship of trust) and a further breach of contract (failure to notify "as promptly as possible" as expressly promised). The silent fraud was committed with malicious intent and reckless indifference to Plaintiff's rights to avoid admitting systemic vulnerability and incurring remediation costs. The silent fraud, including the post-Notice non-response, directly and proximately aggravated and prolonged Plaintiff's personal injury and damages (the theft and ongoing possession of his SSN by Israel-linked actors, emotional distress, and exacerbation of pre-existing disabilities) by denying him timely notice and the ability to mitigate.

b. **Actual Fraud Elements Explicitly Linked to Each Tort**. Defendant made affirmative representations in its publicly available Privacy Policy that it "employ[s] appropriate safeguards to protect Personal Information" and that it would "endeavor to… notify you… as promptly as possible" if it believed security "may have been compromised." These were representations of existing fact and future intent regarding Defendant's security practices and notification commitments. These representations were false when made, or became false with Defendant's knowledge, because Defendant consciously chose not to maintain safeguards commensurate with known threats despite its resources and then intentionally concealed the April 8, 2026 breach after confrontation and after the formal 14-day demand in the July 22, 2026 Notice of Inquiry.

Defendant acted with malicious intent and reckless indifference to Plaintiff's rights. Defendant made these representations to induce customers, including Plaintiff, to trust Defendant with their most sensitive personal and financial information (including SSN XXX-XX-1049) and to use its online banking services. Plaintiff justifiably relied on these representations by providing his SSN and credentials to Defendant and by using its online banking platform in the belief that his information would be protected and that he would be notified promptly if compromised. This actual fraud directly and proximately caused Plaintiff's personal injury: the completed theft and ongoing possession/control of his SSN and credentials by hostile foreign actors associated with Israel, the resulting emotional distress and mental anguish, and the exacerbation of his pre-existing permanent disabilities. Plaintiff's reliance prevented him from taking earlier protective measures that would have been available had Defendant been truthful about its security practices and the breach. Defendant's subsequent silent fraud by omission (intentional concealment after the April 9, 2026 confrontation and after the expired 14-day Notice of Inquiry deadline) furthered and aggravated the actual fraud by actively maintaining the false impression created by its earlier affirmative representations.

c. **Unified Chain**. All torts and all elements are chained as one continuous course of conduct with silent fraud and actual fraud explicitly linked to each: Duty (fiduciary + reasonable care + contractual) → Breaches with malicious intent (gross negligence + fiduciary duty breach + contract breach) → Causation to personal injury (theft and ongoing possession of SSN by Israel-linked actors + emotional distress + exacerbation of pre-existing disabilities) → Silent fraud by omission committed with malicious intent (post-breach concealment after the April 9 confrontation **and** after the formal July 22, 2026 Notice of Inquiry with its 14-day response deadline that Defendant ignored, which further breached fiduciary duty and contract and aggravated personal injury) + Actual fraud (affirmative false representations in Privacy Policy made with scienter and intent to induce reliance, causing and contributing to the same personal injury) → Aggravated and prolonged personal injury and damages across all torts (by preventing timely mitigation and maintaining false security). Silent fraud and actual fraud together form the post-breach and affirmative-misrepresentation components that unify and aggravate the entire chain with malicious intent. They tie gross negligence, fiduciary duty breach, and contract breach together and demonstrate Defendant's malice across all claims. This single continuous course of wrongful conduct—now including the complete non-response to a formal 14-day Notice of Inquiry—proximately caused and aggravated all of

Plaintiff's harms and warrants exemplary and punitive damages under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996). Defendant's conduct shows the highest reprehensibility: making affirmative representations in its Privacy Policy about safeguards and notification, then exposing Plaintiff's SSN to hostile foreign actors through gross negligence, fiduciary duty breach, and contract breach committed with malicious intent, and both affirmatively misrepresenting its practices (actual fraud) and intentionally concealing the breach after direct confrontation **and after a formal 14-day written demand** (silent fraud), thereby causing and aggravating the personal injury and damages from the Israel-linked access and SSN possession.

29. Each of the following violations was committed through the precise pre-breach and post-breach conduct described in paragraphs 24 through 28 (including the July 22, 2026 Notice of Inquiry and Defendant's total failure to respond within the 14-day deadline) and forms part of the single continuous course of conduct that breached all duties with malicious intent, involved both silent fraud and actual fraud, and caused and aggravated Plaintiff's personal injury and damages:

a. 15 U.S.C. § 6801(b) (GLBA) and 12 C.F.R. Part 30, Appendix B: Failed to protect Plaintiff's information and failed to notify after believing security may have been compromised—breaching the duties of gross negligence, fiduciary

care, and contract with malicious intent, and directly causing and aggravating Plaintiff's personal injury through actual fraud (false Privacy Policy representations) and silent fraud (concealment, including after the formal Notice of Inquiry).

b. 12 C.F.R. Part 53: Failed to notify the OCC within 36 hours of the April 8, 2026 incident.

c. MCL 445.72 and ORC § 1349.19: Failed to notify Plaintiff without unreasonable delay—further breach of fiduciary duty and contract committed with malicious intent that aggravated Plaintiff's personal injury and damages through silent fraud, compounded by the complete non-response to the July 2026 Notice of Inquiry.

d. MCL 445.901 et seq. (Michigan Consumer Protection Act): Engaged in unfair and deceptive practices by misrepresenting safeguards and notification while knowingly failing to provide them—constituting both actual fraud (affirmative misrepresentations) and silent fraud.

e. UCC § 4A-202, § 4A-203, and § 1-304: Failed to maintain commercially reasonable security procedures and breached the implied covenant of good faith—directly enabling the unauthorized access and constituting further breach of the duties of gross negligence, fiduciary care, and contract committed with malicious intent that caused and aggravated Plaintiff's personal injury.

30. Plaintiff has suffered compensatory damages of Eight Hundred Thousand Dollars ($800,000.00), calculated as follows and directly resulting from the single continuous chain in paragraph 28, with silent fraud and actual fraud explicitly linked to each tort:

a. Three Hundred Thousand Dollars ($300,000.00) is directly and proximately attributable to Defendant's silent fraud by omission and actual fraud, and related post-breach breaches of fiduciary duty and contract committed with malicious intent. This reflects the personal injury caused and aggravated by:

1. the knowing and intentional concealment, after the April 9, 2026 branch confrontation **and after the formal July 22, 2026 Notice of Inquiry that set a 14-day response deadline which Defendant ignored**, of the April 8, 2026 Israel-linked access and exfiltration; and
2. Defendant's affirmative false representations in its Privacy Policy regarding safeguards and notification. It includes the concrete injury from the completed theft and continuing possession of Plaintiff's SSN XXX-XX-1049 and credentials by hostile foreign actors associated with Israel, plus the resulting daily emotional distress, hypervigilance, anxiety over potential total loss of bank funds or unauthorized sale/use of the personal information by third parties (including for fraudulent loans or investments that would create further tax and legal burdens), and the exacerbation of Plaintiff's pre-

existing permanent disabilities. Because this silent fraud, actual fraud, and related fiduciary and contractual breaches were committed knowingly and with malicious intent after direct confrontation **and after a formal 14-day written demand that went unanswered**, these damages are doubled: $300,000 × 2 = $600,000.00.

b. Two Hundred Thousand Dollars ($200,000.00) is attributable to Defendant's pre-breach gross negligence, breach of fiduciary duty, and breach of contract committed with malicious intent and reckless indifference—the conscious and reckless failure to maintain "appropriate safeguards" despite resources and policy/contractual promises—which directly caused Plaintiff's personal injury (theft and ongoing possession of his SSN and credentials by Israel-linked actors, emotional distress, and exacerbation of pre-existing disabilities).

c. Total compensatory damages: $800,000.00.

31. Exemplary and punitive damages of Two Hundred Fifty Thousand Dollars ($250,000.00) are warranted. Defendant's conduct across the entire unified chain—in which gross negligence, fiduciary duty breach, and contract breach (with malicious intent) caused personal injury, and both actual fraud (affirmative misrepresentations) and silent fraud (intentional concealment after confrontation **and after the expired 14-day Notice of Inquiry**) aggravated that injury—ranks at the highest level of reprehensibility. A constitutionally appropriate punitive-to-compensatory ratio is warranted given Defendant's approximately $285 billion in assets and the malicious nature of the actual fraud and silent fraud that aggravated the personal injury from the Israel-linked access and SSN possession. Allocation on the graduated culpability scale is 60% to the intentional post-breach silent fraud and actual fraud, fiduciary breaches, and contract breaches committed with malicious intent (including the total non-response to the formal Notice of Inquiry), and 40% to the pre-breach gross negligence, fiduciary duty, and contract breaches committed with malicious intent that caused the personal injury.

32. Plaintiff is also entitled to federal statutory enhancements of $225,000.00 (3 violations × $75,000), state statutory enhancements of $75,000.00 (3 violations × $25,000), and UCC enhancements of $300,000.00 (2 provisions × $150,000), as detailed in the Prayer for Relief.

33. **PRAYER FOR RELIEF**

a. WHEREFORE, Plaintiff Patrick-Joseph Groulx respectfully requests that this Honorable Court enter judgment in his favor and against Defendant The Huntington National Bank on Count I, awarding the following relief, which is fully justified by the facts, the elements of silent fraud, malicious intent, gross negligence, breach of fiduciary duty, breach of contract, and personal injury proven herein, Defendant's own Privacy Policy representations, Defendant's substantial financial resources, the severity of the harm (profound personal injury from identity theft by foreign actors), and the need for complete compensation, meaningful punishment, specific and general deterrence, and vindication of the public interest in secure banking and data protection:

1. **Compensatory Damages**: Eight Hundred Thousand Dollars ($800,000.00), calculated as set forth in Count I (including $600,000 in doubled fraud damages attributable to Defendant's knowing and intentional post-breach concealment).

2. **Exemplary / Punitive Damages**: Two Hundred Fifty Thousand Dollars ($250,000.00), justified by the graduated culpability scale, the highest level of reprehensibility, and the standards articulated in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).

3. **Federal Statutory and Regulatory Enhancements**: Two Hundred Twenty-Five Thousand Dollars ($225,000.00) (3 violations × $75,000 each) for Defendant's knowing violations of 15 U.S.C. § 6801(b), 12 C.F.R. Part 30 Appendix B, and 12 C.F.R. Part 53.

4. **State Statutory Enhancements**: Seventy-Five Thousand Dollars ($75,000.00) (3 violations × $25,000 each) for Defendant's knowing violations of MCL 445.72, MCL 445.901 et seq., and ORC § 1349.19.

5. **UCC Enhancements**: Three Hundred Thousand Dollars ($300,000.00) (2 provisions × $150,000 each) for Defendant's knowing violations of UCC §§ 4A-202/203 and 1-304 (as adopted in Michigan and Ohio).

6. **Injunctive and Equitable Relief**:

   i. Immediate implementation of enhanced safeguards on Plaintiff's account(s), including multi-factor authentication upgrades, real-time monitoring alerts, and all other reasonable security measures;

   ii. Court-supervised, independent third-party audit of Defendant's information security program with specific focus on defenses against AI-driven and quantum-enabled threats and compliance with Defendant's own Privacy Policy representations regarding "appropriate safeguards" and notification commitments, followed by implementation of all reasonable recommendations;

iii. Written confirmation to Plaintiff and quarterly reporting to the Court for a period of not less than three (3) years regarding ongoing compliance, incident response, and security posture; and

iv. Such other equitable relief as the Court deems necessary to protect Plaintiff and similarly situated customers.

7. **Additional Relief**: Pre-judgment and post-judgment interest at the maximum legal rate; costs of this action; referral of the foreign-actor involvement (the April 8, 2026 unauthorized access by actors associated with Israel) to the appropriate federal authorities (FBI Cyber Division, U.S. Secret Service, etc.) for criminal investigation; and any other relief the Court deems just, proper, and necessary to make Plaintiff whole and to vindicate the public interest.

34. The aggregate monetary relief exceeds **One Million Six Hundred Fifty Thousand Dollars ($1,650,000.00)**, exclusive of interest, costs, and the substantial value of the injunctive relief. This relief is proportionate to Defendant's financial capacity, the severity of the harm caused, and the need for deterrence.

**Plaintiff demands a trial by jury on all issues so triable.**

# VERIFICATION

I, ______________________________, declare under penalty of perjury under the laws of the United States of America and the State of Michigan that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief formed after reasonable inquiry. I understand this declaration is made for use in a federal civil action.

Executed on this 30th day of August, 2026, at Saginaw, Michigan.

Drafted and Submitted Respectfully by:

Patrick-Joseph Groulx

August 30, 2026

Patrick-Joseph Groulx
2070 Houlihan Road
Saginaw MI 48601
989 860-2550
mr.288074@yahoo.com