**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PATRICK-JOSEPH GROULX,**

**Plaintiff,**

**v.**

**THE HUNTINGTON NATIONAL BANK,**

**Defendants.**

**Case No. 2:26-cv-847**
**Judge James L. Graham**
**Magistrate Judge S. Courter M. Shimeall**

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, Patrick-Joseph Groulx, a Michigan resident proceeding without the assistance of counsel, has submitted a request to file a civil action in forma pauperis.[1] (ECF No. 2.) The Court **GRANTS** Plaintiff's motion to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

Plaintiff filed his original complaint on July 15, 2026. (ECF No. 1-2.) On August 17, 2026, Plaintiff filed his Amended Complaint. (ECF No. 4.) Because the Amended Complaint lacked Plaintiff's handwritten signature, the Court directed him to resubmit a signed copy. On September 8, 2026, Plaintiff submitted a signed copy of the Amended Complaint, which the Court now treats as the operative complaint. (ECF No. 6.)

Accordingly, this matter is before the Court for the initial screen of Plaintiff's Amended Complaint as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend

[1] The Court notes that the United States District Court for the Eastern District of Michigan has enjoined Plaintiff from filing any further lawsuits in that court without obtaining leave of court due to Plaintiff filing numerous frivolous lawsuits in a brief time span. *See Groulx v. Takeda Pharm. Co.*, No. 1:24-CV-12000, 2025 WL 415746, at *6 (E.D. Mich. Feb. 6, 2025).

dismissal of Plaintiff's Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Having performed the initial screen, and for the reasons below, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

## I. INITIAL SCREEN

### A. BACKGROUND

Plaintiff asserts that he was injured on or about April 8, 2026, when "unauthorized foreign actors," whom Plaintiff alleges were associated with or operating from Israel, accessed Plaintiff's "Huntington online banking credentials," "Social Security number . . . , username, password, full account number, Huntington short nickname, the physical address and phone number of Plaintiff's local Huntington branch in Saginaw, Michigan, Defendant's web address, and a Huntington email account." (ECF No. 6, PAGEID #: 191.) The next day, Plaintiff alleges that he presented evidence of the unauthorized access to Defendant's branch in Saginaw, Michigan, but Defendant never notified Plaintiff of the alleged unauthorized access. (*Id.* at PAGEID #: 191–92.) As a result, Plaintiff alleges that he has suffered damages, including "the completed 'theft' and ongoing possession by hostile foreign actors of his SSN, username, password, full account number, and related PII," "severe emotional distress, anxiety, hypervigilance, sleep disturbance, and mental anguish from the knowledge that hostile foreign actors now hold the keys to his financial identity and are positioned to steal his wealth," "concrete and imminent risk of further identity theft, account takeover, credit fraud, and financial devastation, forcing Plaintiff to expend time, resources, and emotional energy on protective measures," "loss of the security and privacy he

reasonably expected in his banking relationship," "exacerbation of pre-existing permanent medical conditions caused by the additional stress," and "loss of faith in the banking system and the ability to conduct secure online banking." (*Id.* at PAGEID #: 194.)

Plaintiff seeks $1.65 million in monetary damages as well as injunctive and equitable relief. (*Id.* at PAGEID #: 224.)

### B. LEGAL STANDARD

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, was enacted to allow a person of limited financial means to have access to the courts. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992). However, to prevent abuses of that leniency, the federal district courts must also review all *in forma pauperis* actions and dismiss any lawsuits or causes of action that the Court determines are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See Hill*, 630 F.3d at 470–71 (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations," it does demand "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Thus, a complaint that

asserts only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" will be insufficient. *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and quotations omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

Further, although the Court is to liberally construe *pro se* complaints "and hold such complaints to a less stringent standard than pleadings prepared by attorneys . . . this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting in part *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). The Court "should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594. Stated differently, Rule 8 bars "a pleading party from 'cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two.'" *Hartzell v. Miami Cnty. Incarceration Facility*, No. 3:17-CV-63, 2017 WL 2590199, at *2 (S.D. Ohio June 15, 2017) (quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011)).

Finally, "federal courts have an ongoing 'duty to consider their subject matter jurisdiction . . . and may raise the issue *sua sponte*.'" *Howard v. Good Samaritan Hosp.*, No. 1:21-CV-160, 2022 WL 92462, at *2 (S.D. Ohio Jan. 10, 2022) (quoting *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)). Thus, "[i]f the court determines

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

### C. ANALYSIS

Plaintiff brings one count for "silent fraud by omission, actual fraud, malicious intent, gross negligence, breach of fiduciary duty, breach of contract, and personal injury." (ECF No. 6, PAGEID #: 205.) Plaintiff purports to bring these claims "under Michigan and federal common law." (*Id.* at PAGEID #: 199.) Plaintiff also appears to allege violations of "15 U.S.C. § 6801(b)," 12 C.F.R. Part 30, Appendix B," "12 C.F.R. Part 53," the Universal Commercial Code ("UCC") §§ 4A-202, 4A-203, 1-304, and various provisions of Ohio and Michigan law.

#### 1. Federal Claims

Although Plaintiff invokes the Court's diversity jurisdiction, he also appears to assert claims under various federal statutes and regulations, including 15 U.S.C. § 6801(b), 12 C.F.R. Part 30, Appendix B, and 12 C.F.R. Part 53. (ECF No. 6, PAGEID #: 223.)

The Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801(b), *et seq.*, does not provide a private right of action. *See Singleton v. Experian Info. Solutions, Inc.*, No. 3:26 CV 521, 2026 WL 3017395, at *3 (N.D. Ohio Oct. 7, 2026) (collecting cases). Accordingly, Plaintiff cannot maintain a claim directly under 15 U.S.C. § 6801(b).

Nor do the cited regulations provide a private right of action. Appendix B to 12 C.F.R. Part 30 contains the Office of the Comptroller of the Currency's ("OCC") "Interagency Guidelines Establishing Information Security Standards." Those Guidelines "address standards for developing and implementing administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information." 12 C.F.R. pt. 30, App. B. Nothing in the Guidelines indicates that they create a private right of action. Likewise, 12 C.F.R.

Part 53 requires a banking organization to, among other things, notify the OCC within 36 hours of certain computer-security incidents. 12 C.F.R. § 53.3. Nothing in that regulation indicates that it creates a private right of action. Moreover, even assuming either regulation provided any private right of action, Plaintiff's Amended Complaint contains only conclusory allegations that Defendant violated either regulation.

Finally, Plaintiff purports to bring his various tort and breach-of-contract claims under "federal common law." (*Id.* at PAGEID #: 199.) But he identifies no federal common-law cause of action applicable to the challenged conduct. His allegations instead describe claims ordinarily governed by state law. *See, e.g.*, *Losey v. N. Am. Philips Consumer Elecs. Corp.*, 792 F.2d 58, 62 (6th Cir. 1986) ("The rights and duties at issue here, regarding the right to recover damages for negligence, are creatures of state law."). *Li v. Wide Open W., Inc.*, No. 2:25-CV-978, 2025 WL 3654344, at *2 (S.D. Ohio Dec. 17, 2025) ("Plaintiff's breach-of-contract claims are creatures of state law."), *report and recommendation adopted*, No. 2:25-CV-978, 2026 WL 95035 (S.D. Ohio Jan. 13, 2026). His unexplained invocation of federal common law does not establish an independent federal cause of action.

Accordingly, it is **RECOMMENDED** that Plaintiff's purported federal claims be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**2. State Law Claims**

Plaintiff also alleges state law claims. Plaintiff brings claims under Michigan law for "silent fraud by omission, actual fraud, malicious intent, gross negligence, breach of fiduciary duty, breach of contract, and personal injury." (ECF No. 6, PAGEID #: 205.) He also appears to allege violations of Michigan Identity Theft Protection Act ("MITPA"), Mich. Comp. Laws §

445.72 *et seq.*, the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 et seq., Ohio Rev. Code § 1349.19, and various provisions of the Uniform Commercial Code "as adopted in Michigan and Ohio." (*Id.* at PAGEID #: 218.)

**a. UCC**

As to the UCC, Plaintiff asserts that he is entitled to $300,000 for Defendant's alleged "knowing" violations of UCC §§ 4A-202/203 and 1-304 "as adopted in Michigan and Ohio." (*Id.* at PAGEID #: 218.) Plaintiff's allegations do not state a claim under those provisions. Sections 4A-202/203 concern the authorization and enforceability of payment orders, including the allocation of responsibility for certain unauthorized payment orders. Plaintiff, however, does not identify any unauthorized payment order or allege that Defendant transferred funds from, or charged an unauthorized payment order to, his account. Rather, he alleges that third parties obtained his personal information and banking credentials. Those allegations do not identify a payment order to which the cited provisions would apply. Nor do the corresponding refund provisions provide a basis for relief because Plaintiff alleges no payment to refund. *See* Mich. Comp. Laws § 440.4704; Ohio Rev. Code § 1304.59.

Plaintiff likewise cannot maintain a freestanding claim under UCC § 1-304. Neither Ohio nor Michigan recognizes an independent cause of action for breach of the UCC's good faith provision. *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 236 (Mich. Ct. App. 2013); *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 470 (Ohio 2018). Consequently, Plaintiff has failed to state a claim under the Ohio or Michigan enactments of UCC §§ 4A-202/203 and 1-304.

Accordingly, to the extent that Plaintiff brings claims under UCC §§ 4A-202/203 and 1-304 as adopted in Michigan and Ohio, it is **RECOMMENDED** that those claims be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**b. Ohio Rev. Code § 1349.19**

As to Ohio Rev. Code § 1349.19, enforcement is reserved to the Ohio Attorney General, and Plaintiff has articulated no basis for recovering under that statute. Accordingly, to the extent that Plaintiff asserts a claim under Ohio Rev. Code § 1349.19, it is **RECOMMENDED** that the claim be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**c. MITPA/MCPA**

As to the MITPA, that statute provides that the "attorney general or a prosecuting attorney may bring an action to recover" a civil fine for violating the statute. Mich. Comp. Laws § 445.72(13). However, the statute also provides that "Subsections (12) and (13) do not affect the availability of any civil remedy for a violation of state or federal law." *Id.* § 445.72(15). "Courts have held this 'implies that consumers may bring a civil action to enforce Michigan's data-breach notice statute through Michigan's consumer-protection statute or other laws.'" *Lurry v. PharMerica Corp.*, No. 3:23-CV-297-RGJ, 2024 WL 2965642, at *9 (W.D. Ky. June 12, 2024) (collecting cases).

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). Plaintiff alleges Defendant violated the MCPA by "misrepresenting safeguards and notification while knowingly failing to provide them," which, he contends, "constitutes both actual fraud (affirmative misrepresentations) and silent fraud." (ECF No. 6, PAGEID #: 218.) Because Plaintiff's MCPA claim rests on alleged

fraudulent misrepresentations and concealment, it is subject to Rule 9(b)'s heightened pleading requirements.

"The provisions of the MCPA are to be construed with reference to the common-law tort of fraud." *Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, at *5 (E.D. Mich. Nov. 28, 2006) (citing *Mayhall v. A.H. Pond Co., Inc.,* 341 N.W.2d 268, 270 (Mich. Ct. App. 1983)); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (requiring fraud standard for MCPA claims); *Lipov v. Louisiana-Pac. Corp.*, No. 1:12-CV-439, 2013 WL 3805673, at *2–3 (W.D. Mich. July 22, 2013) (where the MCPA claim is based on allegations that a defendant "failed to reveal" certain information, it is a fraud-based claim for which the plaintiff "must state the circumstances with particularity"); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008 (E.D. Mich. 2015) (dismissing MCPA claim for failure to meet Rule 9(b) heightened pleading requirements because the plaintiff alleged that the defendants "actively and (or) passively concealed" information but did not allege "the time, the place, or the person making the misrepresentation" or "the content of the misrepresentation").

Plaintiff does not plead his MCPA claim with sufficient particularity under Federal Rule of Civil Procedure 9(b). Under that rule, Plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)). "At a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Id.* (cleaned up).

Although Plaintiff identifies representations in Defendant's privacy policy and asserts that he relied upon them by providing his information and using Defendant's online banking platform,

he does not describe when or under what circumstances he encountered Defendant's policy before undertaking that conduct. Plaintiff identifies statements in Defendants' privacy policy noting that Defendant "employ[s] appropriate safeguards to protect Personal Information" and would "endeavor to . . . notify you . . . as promptly as possible" if it believed security "may have been compromised." (ECF No. 6, PAGEID #: 214.)

As to the safeguard representation, Plaintiff does not allege particularized facts explaining how it was false when made. Although Plaintiff alleges that Defendant "failed to implement and maintain adequate, up-to-date safeguards against known and emerging threats despite having the financial resources to invest $10 million or more in advanced anti-AI bot programs, quantum-resistant authentication, enhanced monitoring, and zero-trust architectures," his allegations do not identify what security measures Defendant actually maintained or explain why they were inconsistent with its representation. (*Id.* at PAGEID #: 193.)

Moreover, Defendant's privacy policy explicitly qualifies that representation:

> We employ appropriate safeguards to protect Personal Information that you provide to us through our Sites. Unfortunately, no method of transmitting or storing data can be guaranteed to be 100% secure. As a result, although we strive to protect Personal Information, we cannot ensure the security of any information you transmit to us through or in connection with our Sites.

(ECF No. 6-1, PAGEID #: 272.) Thus, read in context, the policy does not guarantee that Plaintiff's information will remain secure. The alleged occurrence of a breach therefore does not explain how Defendant's representation that it employed appropriate safeguards was false when made.

His allegations concerning the notification of any breach are similarly deficient. He alleges that Defendant failed to notify him after the alleged breach, but he does not supply facts supporting his assertion that Defendant's earlier representation concerning notification was knowingly false

when made. His assertion that the representations were "false when made, or became false with Defendant's knowledge," does not supply the missing factual circumstances of the alleged fraud. (*Id.* at PAGEID #: 214.) Moreover, the privacy policy states that Defendant "may seek to notify you" if it believes the security of personal information may have been compromised; that language does not make an unqualified promise of notification. (ECF No. 6-1, PAGEID #: 272.)

His concealment theory fares no better. "Subsection 3(1)(s) [of the MCPA] prohibits making an omission that tends to mislead or deceive any consumer, but only if the omitted fact could not reasonably be known by that consumer. Thus, the issue is not whether the omission is misleading to a reasonable consumer but whether the consumer could reasonably be expected to discover the omission at issue." *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999).

Plaintiff alleges that he discovered the alleged data breach before confronting Defendant about it. Although he maintains that Defendant withheld information about the breach's scope and any remedial measures, he does not identify what additional material fact remained unknown to him or explain how its omission misled him. Nor does he explain what protective measure he failed to take because of Defendants' alleged silence or what additional injury resulted from that omission, as distinguished from the alleged breach itself. Accordingly, Plaintiff has not pleaded his fraud-based MCPA claim with sufficient particularity or alleged sufficient facts to state a plausible claim for relief.

Accordingly, to the extent that Plaintiff asserts a claim under the MITPA/MCPA, it is **RECOMMENDED** that the claim be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**d. Actual Fraud/Silent Fraud**

Plaintiff also appears to bring Michigan common-law claims for "actual fraud" and "silent fraud." As discussed above, a heightened pleading standard applies to fraud claims, and a plaintiff pleading a fraud claim must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

To state a claim for fraud under Michigan law, a plaintiff must allege that: 1) a defendant made a material representation; 2) the representation was false; 3) the defendant knew the representation was false or made it recklessly, without knowledge of its truth, as a positive assertion; 4) the defendant intended the plaintiff to act on the representation; 5) the plaintiff relied upon it; and 6) the plaintiff suffered injury as a result. *See Scott v. Bank of Am., N.A.*, 682 F. App'x 417, 419 (6th Cir. 2017), *reh'g denied* (Mar. 30, 2017); *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976).

A plaintiff pleading silent fraud must "show that [Defendant] had a duty to disclose a material fact and failed to do so." *Westfield Ins. Co. v. Enter. 522, LLC*, 34 F. Supp. 3d 737, 747 (E.D. Mich. 2014); *see also Cassidy v. Cassidy*, 899 N.W.2d 65, 88 (Mich. Ct. App. 2017) ("In order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure."). The elements of silent fraud are: (1) the defendant failed to disclose a material fact about the subject matter at issue; (2) the defendant had actual knowledge of the fact; (3) the failure to disclose the fact gave the plaintiff a false impression; (4) when the defendant failed to disclose the fact, he or she knew that the failure to disclose would create a false impression; (5) when the defendant failed to disclose the fact, he or she intended that the plaintiff rely on the resulting false impression; (6) the plaintiff indeed relied on the false impression; and (7) the plaintiff suffered damages resulting from his or her reliance. *City of Dearborn v. Burton-*

*Katzman Dev. Co.*, 2014 WL 7212895, at *10 (Mich. Ct. App. Dec. 18, 2014) (citing *Hord v. Envtl. Rsch. Inst. of Michigan*, 579 N.W.2d 133 (Mich. Ct. App. 1998)). *See also Warren Prescriptions, Inc. v. Walgreen Co.*, No. 17-10520, 2018 WL 287952, at *5–6 (E.D. Mich. Jan. 4, 2018).

For the reasons discussed above concerning Plaintiff's fraud-based MCPA claim, Plaintiff has not pleaded either common-law fraud theory with sufficient particularity or alleged sufficient facts to state a plausible claim for relief. As to actual fraud, Plaintiff does not describe when or under what circumstances he encountered Defendant's privacy policy representations before allegedly relying on them, and he does not supply sufficient factual allegations supporting his assertions that Defendant made those allegedly false statements knowingly or recklessly. As to silent fraud, even assuming Defendant had a duty to disclose information about the alleged breach, Plaintiff does not adequately explain what false impression Defendant's silence created, how he relied on that impression despite Plaintiff's alleged discovery of the breach, or what injury resulted from that reliance. Accordingly, Plaintiff's common-law claims for actual fraud and silent fraud fail to state a claim upon which relief can be granted.

Accordingly, to the extent that Plaintiff asserts Michigan common-law claims for "actual fraud" and "silent fraud," it is **RECOMMENDED** that the claims be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**e. Breach of Contract**

To state a claim for breach of contract, a plaintiff must allege facts sufficient to show: "(1) there was a contract, (2) the other party breached the contract, and (3) this breach resulted in damages to the party claiming breach." *Johnson v. Westfield Ins. Co.*, No. 19-11213, 2019 WL

3456808, at *2 (E.D. Mich. July 31, 2019) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)).

Here, Plaintiff alleges that Defendant's privacy policy is the express agreement between the parties. (ECF No. 6, PAGEID #: 199.) But courts have held that such privacy notices are "not contractual in nature." *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, at *5 (S.D. Ohio Jan. 26, 2023). Rather, these notices "serve to inform [consumers] of their rights under federal law." *Id.*

Even assuming that the policy constitutes an enforceable contract, however, Plaintiff has not plausibly alleged that Defendant breached its terms.

As discussed above, although the policy states that Defendant employs "appropriate safeguards" to protect personal information, Plaintiff does not identify what safeguards Defendant maintained or explain how they were inconsistent with that representation. Moreover, the policy expressly cautions that "we cannot ensure the security of any information you transmit to us through or in connection with our Sites." (ECF No. 6-1, PAGEID #: 272.) Nor does the notification provision require Defendant to notify Plaintiff of a security compromise. Rather, it states that, "[i]n the unlikely event that we believe that the security of your Personal Information in our possession or control may have been compromised, we may seek to notify you of that development." (*Id.*) Plaintiff has therefore not plausibly alleged that Defendant breached the terms of the policy.

Accordingly, to the extent that Plaintiff asserts a Michigan common-law claim for breach of contract, it is **RECOMMENDED** that the claim be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

**f. Remaining Tort Claims**

Finally, Plaintiff fails to state a claim as to his remaining tort claims under Michigan law for "malicious intent," "gross negligence," "breach of fiduciary duty," and "personal injury." (ECF No. 6, PAGEID #: 205.)

"To establish a tort claim under Michigan law, the plaintiff must demonstrate a present injury, even if he or she does not have to establish a physical injury." *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *6 (Mich. Ct. App. Oct. 14, 2021).

Plaintiff does not allege that he suffered cognizable damages as a result of Defendant's alleged conduct. Plaintiff alleged that foreign actors saw his confidential information, but he did not allege that the unknown third parties did anything with that information that injured him. This Court will not presume damages. *See Nyman v. Thomson Reuters Holdings, Inc.*, 942 N.W.2d 696, 706 (2019); *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 922 (Mich. Ct. App. 2014). To the extent Plaintiff seeks damages for prophylactic measures he took to mitigate potential future harm, those expenditures do not establish a cognizable present injury under Michigan law. *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 691 (Mich. 2005). The same goes for his allegations of damages arising from his emotional distress, sleep disruption, and anxiety about a potential future injury. *See Rakyta*, 2021 WL 4808339, at *5 (rejecting the argument that "allegations of damages arising from emotional distress or anxiety about a potential future injury were sufficient to save a claim from summary disposition"). Similarly, Plaintiff's allegations that he might suffer future injuries are too speculative to establish the damage elements of his claims. *See Doe*, 865 N.W.2d at 922.

Plaintiff also alleges that the stress associated with the alleged breach resulted in the "material exacerbation of his pre-existing permanent disabilities from the 2019 pesticide exposure." (ECF No. 6, PAGEID #: 213.) But his generalized assertion that the incident

exacerbated his disabilities, without factual allegations describing the asserted aggravation, does not plausibly allege an additional present injury beyond the emotional distress discussed above.

Accordingly, to the extent that Plaintiff asserts tort claims under Michigan law for "malicious intent," "gross negligence," "breach of fiduciary duty," and "personal injury," it is **RECOMMENDED** that those claims be **DISMISSED** under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

## II. CONCLUSION

Plaintiff's motion to proceed *in forma pauperis* (ECF No. 1) is **GRANTED**.

For the reasons set forth above, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**